Gaston, Judge,
after stating the case as above, proceeded as follows: Upon the important question, whether the site for the seat of justice has been definitively fixed by those who were appointed by the Legislature to select it, we entertain the same views which have been expressed by his Honor. Where a public act is to be done by commissioners for that purpose appointed, and the commissioners, or so many of them as by the terms of their appointment are required to act, do meet and confer, and a determination is made upon the subject by a majority of them, the majority will conclude the minority, and their act will be the act of the whole. Grendley v. Barker, 1 Bos. & Pul. 229. Exparte Rogers, 7 Cowan, 526. The act of Assembly authorised nine of the eleven commissioners to act. More than that number assembled, conferred, and resolved to fix on the site by a vote. The voice of the majority announced upon that vote, was the voice of the body; and accordingly the journal: after recording the vote, pronounces the result of it as the final decision of the board. After this decision, the board had nothing else to do; it was functus oficio. It adjourned sine die — and those of whom it had been composed had no right to re-assemble and vote that they had not selected a site.
*525 ' Entertaining this opinion, and presuming that it is very desirable that this county contention could be at once settled v . • , . • • , , , according to the right on the mam question, we íeel reluctance in differing from the Judge on the question whether the seven persons first named in the commission, accepted the donation for the use of the conuty, under the provisions of the 11th section. These persons having been all present when the final decision of the board was taken, and a majority of them having voted in concurrence with that decision, we agree with the Judge in holding that they did resolve to accept Johnston’s proposed donation — and if that donation, as proposed, had been absolute and definite, the mere act of surveying the land and taking the deed, might have been performed by any one or more of the commissioners, or by any agent or attorney — provided that these acts were done in conformity to the terms of the proposal. The Superior Court held, that Johnston’s proposition was absolute and definite — to give 25 acres, 20 poles wide on each side of the lane, commencing at a straight fence west of the house, and continue to the river — accompanied with a declaration that if the commissioners preferred that the length of the proposed donation should lie north and south, instead of east and west, he would vary the proposition accordingly. Now, it is not improbable that it was so understood, and that the commissioners, by their acceptance of it, without intimating a desire to have the land laid off in the form last suggested, meant to take the donation in the form first mentioned. But, after much reflection, we feel ourselves bound to pronounce, that as the terms of acceptance set forth the proposition in exten-so., as one in the alternative, the right to take the land, either according to the one or to the other form proposed, is reserved to those who are thereafter to act for the county — that is to say, to the seven commissioners. By the acceptance of Johnston’s proposition by the full board, the site was established. It was to be west of his house, adjoining the fence, and on both sides of the lane — but according to our interpretation of that proposition, the board left it to the seven commissioners who were then to act, to choose how the land, the subject of the donation, should be run. And if so, without *526 enquiring whether all of the persons constituting this second commission, should be actually present when the choice was made, it is clear that three of the seven could not make it. t|iey ]-ia{j reported their selection to their associates in full convention, and these had sanctioned, as they promised they would sanction, what had been so done, of course the act would have become that of the whole body. But nothing of this kind appears to have been done.
The mandamus, therefore, which has been ordered, must be superseded. If the controversy is not otherwise adjusted, the seven commissioners are those who have yet to act upon this subject — and if they will not, it is upon them the Court must be invited to act.
We have considered the objections which were taken to the form of laying off the twenty-six acres, and concur in the opinion expressed below, that these are not well founded. We think the fair interpretation of Johnston’s first proposition is, that the parallelogram should be forty poles wide, comprehending the waggon-road, which was to be in the centre as near as might be — and also, that the parallelogram should extend so far as to reach the river — not that the entire western boundary of the land should but on the river.
One question has not been raised by the parties, but our attention has been necessarily called to it by the facts of the case. The County Court appointed commissioners to lay oif and sell the lots in the county town, before any such town existed. In doing this, we are of opinion that the Court misconstrued the act of Assembly. Though the words of the 12th section will admit of the interpretation that this appointment should be made at the first term after the enactment of the statute, to us, it seems clear that the Legislature meant the appointment to be made at the first term after the purchase or donation of the land selected for the town was completed, as directed by the preceding section. We regard, therefore, the appointment made by the County Court as premature — and revocable at least — if not absolutely void.
The judgment of the Superior Court must be reversed.
Per Curiam. Judgment reversed.